**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BBCN BANK, as successor to Foster Bank, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 10220 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| WACHOVIA BANK N.A. n/k/a WELLS | ) | |
| FARGO BANK, N.A., and JP MORGAN | ) | |
| CHASE BANK N.A., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERLING FIRE RESTORATION, LTD. and | ) | |
| MIDWEST CLOTHING AND | ) | |
| RESTORATION, INC. d/b/a Midwest | ) | |
| Restoration Services, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## OPINION AND ORDER

Plaintiff BBCN Bank, as Foster Bank's successor ("BBCN"),[1] brought this suit against

Defendants Wells Fargo Bank, N.A., as successor to Wachovia Bank, N.A. ("Wells Fargo"), and

JPMorgan Chase Bank, N.A. ("Chase"), alleging that they violated § 3-110(d) of the Uniform

Commercial Code ("UCC"), 810 Ill. Comp. Stat. 5/3-110(d) by accepting and paying out on a

check that had been indorsed by only one of the check's named payees.  Because Sterling Fire

Restoration, Ltd. ("Sterling"), to whom a portion of the proceeds of that check were intended,

had already settled a suit against Chase and Wells Fargo in which Sterling had sought recovery

_____

[1] BBCN acquired Foster Bank on August 13, 2013.

on that check, Chase filed a third-party complaint against Sterling and another party involved in the settlement, Midwest Clothing and Restoration, Inc., d/b/a Midwest Restoration Services ("Midwest"), seeking reimbursement and indemnification for the costs and damages arising from this action.[2] BBCN, Chase, and Wells Fargo have filed motions for summary judgment on BBCN's claim. Chase also seeks partial summary judgment as to liability on its reimbursement claim against Midwest, while Midwest has filed a motion for judgment on the pleadings on the entirety of Chase's third-party complaint.

Although Chase and Wells Fargo violated § 3-110(d) by accepting and paying on the check without obtaining both required indorsements, BBCN cannot recover on its claim because Sterling released the claim in prior litigation and BBCN, as Sterling's assignee, is bound by the release. And because by filing this suit, BBCN has challenged the validity of that release, pursuant to its settlement agreement with Chase and Wells Fargo, Midwest is responsible for Chase's costs in defending against BBCN's claim. But because the Court cannot determine as a matter of law whether Midwest breached the settlement agreement's representations and warranties, the indemnification count of the third-party complaint remains pending.

## BACKGROUND

On December 22, 2011, Chubb & Son ("Chubb"), an insurance company, acting through its agent, York Risk Services Group, Inc. ("York"), drafted check number 9407 from a Wachovia account (the "First Check"). The First Check was for $118,259.46 and made payable to "KNV Investment Corp d/b/a Executive Plaza Hotel & Best Gardens Restaurant & Foster Bank." Doc. 50-8. The First Check was endorsed "Best Gardens Rest. KNV Investment Corp. D/B/A Executive Plaza Fair Plaza LLC Act xxxxx9177." *Id.* On or before December 27, 2011, the First Check was presented for payment to Chase, which credited Account No. 9177, not owned

---

[2] The Court has entered a default against Sterling on Chase's third-party complaint. Doc. 49.

by Foster Bank, with $118,259.46.  Chase then presented the First Check to Wachovia, which paid Chase that amount.

On April 5, 2012, Sterling filed suit against Wells Fargo, Chase, Chubb, and York in the Circuit Court of Cook County.  The Defendants removed the case to this Court, where it was assigned case number 12 C 3530 (the "2012 case").  As relevant here, Sterling alleged that Wells Fargo and Chase violated UCC § 3-110(d) by accepting and paying out on the First Check that had been indorsed by only one of the check's named payees.  Wells Fargo and Chase moved to dismiss that claim, arguing that Sterling was not a named payee of the check and so could not assert an interest in the check.  While the motion to dismiss was pending, Foster Bank executed an assignment of the check to Sterling, "relinquish[ing] and assign[ing] . . . the bank's interest in and to" the First Check to Sterling.  Doc. 50-12.  Foster Bank also "acknowledge[d] that the proceeds of [the First Check] are payable for services rendered and work performed by Sterling." *Id.*  Sterling did not make the Court aware of the assignment while the motion to dismiss was pending.  The Court dismissed with prejudice Sterling's UCC claim, finding that Sterling had no interest in the First Check and so "cannot sue under the UCC for any misstep the Banks may have made when accepting and paying on that check."  *Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*, No. 12 C 3530, 2012 WL 4932845, at *8 (N.D. Ill. Oct. 16, 2012).

Sterling then filed a motion to alter or amend the Court's dismissal of the UCC claim with respect to the First Check, revealing that Foster Bank had assigned its interest in the First Check to Sterling on July 18, 2012.  According to Sterling, the assignment gave Sterling "the same rights as Foster Bank, a payee identified on the First Check" and allowed Sterling to pursue the UCC claim with respect to the First Check.  Doc. 50-14 at 6.  The Court denied Sterling's motion on November 9, 2012, refusing to revisit its ruling because Sterling could have notified

the Court of the assignment at an earlier time. *Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*, No. 12 C 3350, 2012 WL 5471122 (N.D. Ill. Nov. 9, 2012). Sterling then filed a motion for clarification or reconsideration, arguing that the Court never addressed Sterling's "new" claim based on the assignment from Foster Bank, instead addressing only a claim based on Sterling's alleged third party beneficiary status with respect to the First Check. During argument on the motion, Sterling's counsel acknowledged that Sterling was attempting to assert the "[s]ame claim but a different theory of recovery based upon different facts." Doc. 50-18 at 11:2–3. The Court denied Sterling's motion, ruling again that Sterling could not bring a UCC claim with respect to the First Check. *Id.* at 13:6–7, 16:4–8. In ruling, however, the Court noted that it was not ruling "with respect to anybody else." *Id.* at 16:7–8.

On May 21, 2013, Sterling and Midwest entered into a settlement agreement with Chase and Wells Fargo to resolve the 2012 case. As part of the settlement, Chase and Wells Fargo agreed to pay Sterling and Midwest $72,000, which Sterling and Midwest were to allocate among themselves. Sterling and Midwest also agreed to a release of claims:

> Sterling Fire and Midwest Restoration, for themselves and for their heirs, agents, officers, directors, managers, affiliates, attorneys, assigns, relatives, representatives, predecessors in interest, and successors in interest (collectively the "Releasing Parties"), hereby unconditionally release and discharge Chase and Wells Fargo . . . from any and all past, present, and future claims, losses, liabilities, causes of actions, liens, lawsuits, or damages, whether known or unknown, arising out of any act or omission that occurred from the beginning of time through the date of this Agreement and relating to . . . any claim that has been brought or could have been brought in the Lawsuit.

Doc. 50-20 at 6. The settlement agreement also provided that if "the validity of the foregoing releases is challenged by Sterling Fire or Midwest Restoration . . . Sterling Fire and Midwest Restoration jointly and severally agree to reimburse Chase and Wells Fargo for any costs in defending such claims or causes of action, including their reasonable attorneys' fees and costs,

and for any damages awarded against Chase or Wells Fargo." *Id.* at 7. The agreement was binding on the parties, their assigns, and "any other person claiming by or through a Party." *Id.* at 9. Chase fully performed its obligations under the agreement. On May 24, 2013, Sterling, Chase, and Wells Fargo filed a stipulation of dismissal in the 2012 case, dismissing that case with prejudice.

On August 6, 2014, Sterling entered a settlement agreement with BBCN, as Foster Bank's successor, to resolve a mechanics lien claim that Sterling had filed against BBCN. BBCN agreed to pay Sterling $90,000 in exchange for a release of Sterling's mechanics lien on property that BBCN now owned, reassignment of Foster Bank's interest in the First Check previously assigned to Sterling, and dismissal of the mechanics lien litigation. Sterling also made the following representation regarding the 2012 case:

> Sterling hereby represents that pursuant to the Chase Settlement, Sterling in no way waived any right, title or interest it may have obtained by virtue of the Assignment from Foster Bank in and to Check No. 1 as against Chase or any of the Federal Defendants. Sterling hereby quit claims to BBCN Bank any right, title and interest it may have acquired by virtue of an Assignment by Foster Bank of its right, title and interest in and to Check No. 1. The Re-Assignment by Sterling to BBCN Bank, as successor to Foster Bank, is made by Sterling without recourse and without any warranties, express or implied, or representations by Sterling concerning the ability of BBCN Bank to collect any sums relating to Check No. 1 from Chase or any of the Federal Defendants.

Doc. 50-22 at 9. Sterling executed a separate reassignment document, stating that Sterling relinquished and reassigned the assignment and Sterling's interest in and to the First Check to BBCN. *Id.* at 22. The reassignment further acknowledged that any proceeds from the First Check would be payable exclusively to BBCN. *Id.*

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the complaint and answer have been filed. Fed. R. Civ. P. 12(c). When the movant seeks to "dispose of the case on the basis of the underlying substantive merits . . . . the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). The pleadings include the complaint, answer, and documents attached as exhibits to the complaint and answer. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998). The Court should grant a motion for judgment on the pleadings if "no genuine issues of material fact remain to be resolved" and the movant "is entitled to judgment as a matter of law." *Alexander*, 994 F.2d at 336.

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light

most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering BBCN's motion for summary judgment, the Court views all evidence in the light most favorable to Wells Fargo and Chase, and when considering Wells Fargo and Chase's motions for summary judgment, the Court views all evidence in the light most favorable to BBCN. *Id.*

## ANALYSIS

### I. BBCN's UCC Claim

BBCN alleges that Chase and Wells Fargo violated UCC § 3-110(d) by accepting and paying the First Check even though it was indorsed by only one of the two named payees. Section 3-110(d) provides that "[i]f an instrument is payable to 2 or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." 810 Ill. Comp. Stat. 5/3-110(d). Here, there is little dispute that Chase and Wells Fargo violated § 3-110(d). The First Check was made payable to two payees "not alternatively" (i.e. jointly), because the check used the conjunctive "and" and not the disjunctive "or." *See* 810 Ill. Comp. Stat. 5/3-110(d), Uniform Commercial Code Comment 4 ("An instrument payable to X and Y is governed by the second sentence of subsection (d)."). Pursuant to § 3-110(d), then, both payees must endorse the check in order for it to be properly negotiated or enforced. *See id.* ("If an instrument is payable to X and Y, neither X nor Y acting alone is the person to whom the instrument is payable. Neither person, acting alone, can be the holder of the instrument. The instrument is 'payable to an identified person.' The 'identified person' is X and Y acting jointly.

Section 3-109(b) and Section 1-102(5)(a). Thus, under Section 1-201(20) X or Y, acting alone, cannot be the holder or the person entitled to enforce or negotiate the instrument because neither, acting alone, is the identified person stated in the instrument."). Here, however, Chase and Wells Fargo accepted and paid on the First Check without Foster Bank's endorsement. This amounts to a § 3-110(d) violation.[3]

But Chase and Wells Fargo argue that regardless of whether a § 3-110(d) violation occurred, BBCN is barred from pursuing that claim. They contend that BBCN's claim is barred by (1) Sterling's release in the 2012 case's settlement agreement, by which BBCN is bound as Sterling's assignee; (2) the dismissal with prejudice of all claims in the 2012 case, leaving Sterling with nothing to assign to BBCN; and (3) *res judicata*. The Court agrees that BBCN's claim is barred by Sterling's release of claims contained in the settlement agreement from the 2012 case.

In settling the 2012 case, Sterling agreed, on behalf of itself and its assigns, to "unconditionally release and discharge Chase and Wells Fargo . . . from any and all past, present, and future claims, losses, liabilities, causes of actions, liens, lawsuits, or damages, whether known or unknown, arising out of any act or omission that occurred from the beginning of time through the date of this Agreement and relating to . . . any claim that has been brought or could have been brought in the Lawsuit." Doc. 53-5 at 6. The claim asserted here—a § 3-110(d) violation against Chase and Wells Fargo for accepting and paying the First Check even though Foster Bank had not endorsed it—is a claim that Sterling made in the 2012 case. *Compare* Doc.

---

[3] Technically, BBCN should have sued Chase and Wells Fargo pursuant to § 3-420 for conversion. 810 Ill. Comp. Stat. 5/3-420; *see Parkway Bank & Trust Co. v. State Farm Fire & Cas. Co.*, 990 N.E.2d 1202, 1206, 2013 IL App (1st) 122387, 371 Ill. Dec. 824 (2013). That BBCN styled its claim as one for violation of § 3-110(d) is not cause for dismissal, however, as a plaintiff need not plead legal theories in federal court and citation of the wrong statute does not amount to a "fatal mistake." *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Thus, Chase's third affirmative defense—that there is no private right of action for violation of § 3-110(d)—is unavailing.

50-4 ¶¶ 22–28 (BBCN complaint), *with* Doc. 50-10 ¶¶ 21–30 (2012 complaint). Although the Court in the 2012 case initially analyzed the § 3-110(d) claim using third-party beneficiary principles, it later precluded Sterling from pursuing the claim as Foster Bank's assignee, reasoning that the "assignment claim," as Sterling termed it, was the same claim that Sterling had asserted in its complaint just based on a different legal theory. *See* Doc. 50-18 at 6:8–25, 10:25– 11:1, 15:22–16:3. This claim, regardless of who is asserting it or on whose behalf, was therefore expressly contemplated by the parties as one of the claims being released when they entered the settlement agreement—it "ha[d] been brought or could have been brought" in the 2012 case. *See Hampton v. Ford Motor Co.*, 561 F.3d 709, 715 (7th Cir. 2009) ("A general release typically covers 'all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry.'" (quoting *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990))). And BBCN, as Sterling's assignee with respect to the First Check, is bound by Sterling's release of the claim and acquired no greater rights to assert the claim than Sterling held before the assignment. *See Kenny v. Kenny Indus., Inc.*, 976 N.E.2d 1040, 1046, 2012 IL App (1st) 111782, 364 Ill. Dec. 477 (2012) ("[T]he assignee cannot, merely by virtue of the assignment, acquire any greater right or interest than the assignor possessed."); *Brandon Apparel Grp. v. Kirkland & Ellis*, 887 N.E.2d 748, 757, 382 Ill. App. 3d 273, 320 Ill. Dec. 604 (2008) ("[T]he assignee stands in the 'shoes' of the assignor.").

BBCN argues that Sterling only assigned BBCN its interest in and to the First Check and that the release does not encompass any interest in the First Check or the original Foster Bank assignment to Sterling. But this takes too narrow a view of the assignment, as the focus instead should be on whether the interest in the First Check that Sterling transferred was essentially rendered meaningless for purposes of this case by the release. Although BBCN is correct that

the settlement agreement does not specifically discuss the First Check, the release's language is specific enough to encompass the claims that Sterling did assert against Chase and Wells Fargo based on § 3-110(d) as a third-party beneficiary of the First Check and that it later attempted to but was not allowed to assert as Foster Bank's assignee. *See Goodman v. Hanson*, 945 N.E.2d 1255, 1262–1268, 408 Ill. App. 3d 285, 349 Ill. Dec. 103 (2011) (reviewing caselaw on general releases and finding release barred claims that could have been asserted in first lawsuit). This is not a situation where Chase and Wells Fargo are attempting to apply the release to a claim not contemplated by the release, such as occurred in *Heard v. Tilden*, --- F.3d ----, 2016 WL 107155, at *4 (7th Cir. 2016). In that case, a release referenced two lawsuits, but the defendants sought to expand the release to encompass claims that had not been raised or referenced in those lawsuits. *Id.* The Seventh Circuit held that the reference to the two lawsuits "limit[ed] the scope of the release to claims arising in those actions," as future claims could not have been contemplated at the time the release was signed. *Id.* But here, BBCN's claim with respect to the First Check was specifically raised by Sterling in the 2012 case before the settlement was entered, barring it from being asserted here. *See Goodman*, 945 N.E.2d at 1268. Thus, judgment on the complaint is entered for Chase and Wells Fargo.[4]

## II.     Chase's Third-Party Complaint

Chase brought a third-party complaint against Sterling and Midwest, contending that pursuant to the settlement agreement's reimbursement and indemnification provisions, Sterling and Midwest are responsible for the costs and expenses incurred by Chase and any damages award entered against Chase in this case. Chase moves for summary judgment on the reimbursement claim against Midwest, a motion to which Midwest did not respond, while

---

[4] Because the Court finds that the release bars BBCN's claim, the Court need not address Chase and Wells Fargo's other arguments as to why they are entitled to judgment.

Midwest has moved for judgment on the pleadings on both claims.[5]  The Court will address the

claims in turn.

## A.     Reimbursement Claim

The settlement agreement includes the following reimbursement provision, which Chase

has invoked:

> In the event the validity of the foregoing releases is challenged by
> Sterling Fire or Midwest Restoration . . . Sterling Fire and Midwest
> Restoration jointly and severally agree to reimburse Chase and
> Wells Fargo for any costs in defending such claims or causes of
> action, including their reasonable attorneys' fees and costs, and for
> any damages awarded against Chase or Wells Fargo.

Doc. 50-20 at 7.  The language of the reimbursement provision, and the Court's resolution of

BBCN's claim, indicate that Midwest and Sterling must reimburse Chase for any costs it has

incurred in this action.

Sterling's assignee, BBCN, has challenged the release by bringing this suit against Chase

and Wells Fargo.  Midwest attempts to argue that BBCN's claim is not dependent on Sterling's

assignment of the First Check to BBCN, meaning that the claim could have been brought

regardless of that assignment.  But the Court has already found that not to be the case, with

BBCN only able to assert whatever rights Sterling could have against Chase and Wells Fargo.

Because the settlement agreement indicates that it is binding on the parties and their assigns,

BBCN's claim against Chase and Wells Fargo based on the First Check, which the Court has

found was released by the settlement agreement, triggers the settlement agreement's

---

[5] Default was entered against Sterling, leaving only the issue of damages for further determination.
Although Midwest did not respond to Chase's motion for summary judgment, its failure to do so does not
automatically entitle Chase to judgment on its claim.  *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th
Cir. 2012).  The Court must still ensure that Chase is entitled to judgment as a matter of law.  *Id.*

reimbursement provision.[6]  As such, Sterling and Midwest are jointly and severally liable to reimburse Chase for its attorneys' fees and costs.  Doc. 50-20 at 7.  It does not matter that BBCN's claim is barred by the settlement agreement, meaning that Chase is not liable for damages, for the reimbursement provision covers any challenge to the release regardless of whether that challenge is successful or not.  *See id.* (requiring only that the validity of the releases be challenged, with a damages award not being a condition precedent for recovery).  Thus, judgment will be entered for Chase and against Midwest as to liability on this claim, with the issue of damages to be determined at a later date.

## B.    Indemnification Claim

Chase also brings an indemnification claim based on Sterling's and Midwest's agreement to indemnify Chase if any representations and warranties in the settlement agreement were not correct and Chase has to incur costs and expenses to resolve disputes arising therefrom.  Specifically, Chase contends that Sterling and Midwest incorrectly represented and warranted that they had not "assigned, pledged, encumbered, transferred, or otherwise alienated any present or future right, title, claim, or interest in the Lawsuit . . . to any person or entity," Doc. 50-20 at 5, where Sterling thereafter assigned the First Check to BBCN.  Midwest moves for judgment on the pleadings on this claim, contending that the representation and warranty applies only at the time of signing and is not a continuing obligation.  But Midwest does not provide any support for this assertion, and the Court will not construct Midwest's legal arguments for it.  *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the

---

[6] Chase also argues in support of summary judgment that Sterling has challenged the validity of the release by representing in its settlement agreement with BBCN that it had not waived any right, title, or interest in the First Check against Chase or Wells Fargo pursuant to the settlement agreement in the 2012 case.  Because Midwest does not argue that the reimbursement provision does not apply to challenges to the release by an assignee, the Court need not address whether Sterling itself challenged the validity of the release.

court's responsibility to research the law and construct the parties' arguments for them."). Moreover, Midwest states that when the settlement agreement was signed, neither Midwest nor Sterling had assigned any interest in the First Check to any person or entity but does not provide support for this factual assertion. Because Midwest's motion is a motion for judgment on the pleadings, in which the Court is only to look at Chase's third-party complaint and Midwest's answer and which demonstrate that factual disputes exist, the Court cannot conclude that Midwest or Sterling did not breach the representation and warranty. *See* Doc. 32 ¶¶ 25, 37, 39 (denials by Midwest indicating that Chase and Midwest disagree on the indemnification claim). Thus, the claim's resolution must be deferred until additional evidence is presented to the Court.

## CONCLUSION

For the foregoing reasons, JPMorgan Chase Bank, N.A. and Wells Fargo Bank, N.A.'s motion for summary judgment [51] is granted. JPMorgan Chase, N.A.'s motion for partial summary judgment on Count I of the third-party complaint [52] is granted. BBCN Bank's motion for summary judgment [54] is denied. Midwest Clothing and Restoration's motion for judgment on the pleadings [56] is denied. Judgment is entered for JPMorgan Chase Bank, N.A. and Wells Fargo Bank, N.A. on BBCN Bank's complaint. Judgment as to liability is entered for JPMorgan Chase, N.A. and against Midwest Clothing and Restoration on Count I of JPMorgan Chase's third-party complaint.

Dated: February 22, 2016

_____
SARA L. ELLIS
United States District Judge